IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINCOLN SQUARE 1766 ASSOCIATES, LLC,<br>    Plaintiff,<br><br>    v.<br><br>GREAT AMERICAN INSURANCE COMPANY,<br>    Defendant. | CIVIL ACTION<br><br><br>NO. 20-4003 |

DuBois, J.                                                                                                        October 23, 2020

# MEMORANDUM

## I.   INTRODUCTION

This is a breach of contract case based on a lease guarantee bond. Plaintiff, Lincoln Square 1776 Associates, LLC ("Lincoln Square"), alleges that defendant, Great American Insurance Company ("Great American"), owes Lincoln Square unpaid rent due under a commercial lease that Great American secured pursuant to the lease guarantee bond. Presently before the Court is Defendants' Rule 12(b)(1) Motion to Dismiss or, in the Alternative, Stay. Defendant asks the Court to exercise *Colorado River* abstention and dismiss or stay the case in light of ongoing litigation between the parties in Washington state court. For the reasons set forth below, the Court denies the Motion.

## II.   BACKGROUND

Plaintiff, Lincoln Square, is a Delaware limited liability company that owns thirty-eight residential apartment units located in the Lincoln Square building at 1000 South Broad Street, Philadelphia, Pennsylvania (the "building"). Compl. ¶¶ 2, 6. On or about September 30, 2019, Lincoln Square entered into a Master Lease Agreement and Amendment (the "Lease") with Stay

Alfred, Inc. ("Stay Alfred").  Stay Alfred then leased the apartment units in the building to residential tenants.  Comp. ¶ 1.  Under the Lease with Lincoln Square, Stay Alfred is required to pay Lincoln Square $111,967.00 in rent on or before the first calendar day of each month.  Compl. ¶ 7.  The Lease provides, "Any action to enforce this Lease must be filed in the Commonwealth or federal courts of Pennsylvania where the [building] is located."  Compl. Ex. 1 ("Master Lease Agreement") §19.02.

Defendant, Great American, is an Ohio corporation with its principal place of business in Ohio.  Compl. ¶ 3.  As a condition of the Lease, Stay Alfred entered into a Lease Guarantee Bond (the "Bond") with Great American to guarantee Stay Alfred's monthly payments to Lincoln Square.  Compl. ¶ 8.  The Bond is effective from November 7, 2019 to November 7, 2020, and it binds Stay Alfred and Great American up to a penal sum of $460,068.  Compl. ¶ 10.  The Bond includes a *force majeure* clause that states, "If [Stay Alfred] fails to make the monthly Base Rent payment(s) required in the Agreement due to a Force Majeure event, then [Great American] is not liable for any payment(s) then due subsequent to and arising, directly or indirectly, from the Force Majeure event."  Compl. Ex. 1-C (Ex. C to Master Lease Agreement, "Lease Guarantee Bond Agreement").  The Bond does not define "force majeure event."  The Bond further provides that the Lease "forms part of this surety bond."  Lease Guarantee Bond Agreement.

Stay Alfred did not pay Lincoln Square the rent owed for April, May, or June 2020, which totals $335, 901.  Compl. ¶¶ 16, 18.  Lincoln Square provided Stay Alfred with notice of default and demand to cure in April and May 2020.  Compl. ¶¶ 11, 13.  Lincoln Square submitted to Great American a notice of claim under the Bond in April and May 2020.  Compl. ¶¶ 12, 14.  On May 19, 2020, Great American acknowledged Lincoln Square's claims and

requested additional information. Compl. ¶ 15. Lincoln Square provided the information on May 22, 2020. Compl. ¶ 15. Stay Alfred's tenants remain in the building. Compl. ¶ 16.

"On May 26, 2020, Stay Alfred filed a Petition for Appointment of a General Receiver in the Superior Court of Spokane County, State of Washington, pursuant to the Washington State receivership statutes. That same day, the court granted Stay Alfred's Petition" and entered an order appointing a general receiver. Compl. ¶ 20.

On June 23, 2020, Great American filed a declaratory judgment action in the Superior Court of the State of Washington, County of Spokane, against Lincoln Square, eight other landlords of Stay Alfred, and Stay Alfred's General Receiver (the "Washington Action"). Def.'s Ex. A ("Washington Compl."). In that action, Great American alleges that, "[a]s a result of the global lockdown caused by the COVID-19 pandemic, Stay Alfred was unable to meet its rent obligations on many of its leased properties" and that the COVID-19 pandemic is a *force majeure* event under the Bond. Washington Compl. ¶¶ 4.8, 9.4. Great American alleges that, under the terms of the Bond, "if Stay Alfred fails to make the monthly [rent payments] as required in the Bond due to a Force Majeure event, then [Great American] is not liable for any payment due subsequent to and arising, directly or indirectly, from the Force Majeure event." Washington Compl. ¶ 9.2. Great American seeks a declaratory judgment that it is not liable for any payments under the Bond and that "Stay Alfred is excused from performance under its lease" under the doctrines of frustration of purpose, impracticability, and impossibility. Washington Compl. ¶ 9.5. Lincoln Square filed a motion to dismiss the Washington Action for lack of personal jurisdiction and for improper venue. Pl.'s Ex. B. That motion has not yet been decided.

Lincoln Square filed this action (the "Pennsylvania Action") against Great American in

the Court of Common Pleas of Philadelphia County, Pennsylvania on July 17, 2020, alleging one count of breach of contract.  On August 13, 2020, Great American filed a motion in the Washington Action to enjoin Lincoln Square from proceeding with the Pennsylvania Action.  Def.'s Br. at 2.  Great American filed a Notice of Removal in the Pennsylvania Action on August 18, 2020.  On August 20, 2020, Great American filed the pending Motion to Dismiss, or in the Alternative, to Stay.  Lincoln Square filed a Response on September 3, 2020.  The Motion is thus ripe for decision.

### III. APPLICABLE LAW

Great American brings this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1).  "In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  "A challenge to a complaint for failure to allege subject matter jurisdiction is known as a 'facial' challenge," and a "challenge contending that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges" is a "factual" challenge.  *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n.7 (3d Cir. 2001).  "In reviewing a factual attack, the court may consider evidence outside the pleadings."  *Gould Elec., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

Great American's Motion in this case presents a factual challenge because it does not aver that Lincoln Square has failed to allege there is subject matter jurisdiction, but rather that the Court should abstain from hearing the case in light of outside evidence.  As such, the Court will consider the evidence the parties have presented in the Motion and Response.

### IV. DISCUSSION

Defendant asks the Court to exercise *Colorado River* abstention and dismiss or, in the

alternative, stay the Pennsylvania Action. In *Colorado River Water Conservation District v. United States*, the Supreme Court noted that, generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." 424 U.S. 800, 817 (1976) (internal quotation marks omitted). However, under certain "exceptional circumstances," a stay or dismissal by the federal court in the face of a concurrent and related state case is permitted on the grounds of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* (internal quotation marks omitted). Such circumstances are rare given the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id; see also Univ. of Md. v. Peat Marwick Main & Co.*, 923 F.2d 265, 275–76 (3d Cir. 1991) ("The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a *res judicata* or collateral estoppel effect on the other action.").

The analysis under *Colorado River* consists of two steps. First, the Court determines whether parallel state and federal proceedings are underway. *Ryan v. Johnson*, 115 F.3d 193, 196 (3d Cir. 1997). Second, the Court evaluates the six factors set out in *Colorado River* and refined in *Moses H. Cone Memorial Hospital v. Mercury Construction Corporation*, 460 U.S. 1 (1983), to determine if "exceptional circumstances" warrant abstention. *Ryan*, 115 F.3d at 196.[1] The Court analyzes each step in turn.

---

[1] The *Colorado River* standard applies to the Court's analysis of whether to dismiss or stay the Pennsylvania Action. "When a district court relies on the *Colorado River* doctrine to stay a case in federal court because it is duplicative with a state court proceeding, such a stay will generally have the practical effect of a dismissal by putting a party effectively out of federal court." Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999) (internal quotations omitted).

### A. Parallel Proceedings

In the context of *Colorado River* abstention, "cases are parallel when they involve the same parties and claims." *Id.* Parallel proceedings are those that are "truly duplicative" and involve parties and claims that are "identical" or at least "effectively the same." *Trent v. Dial Med. of Fla., Inc.*, 33 F.3d 217, 223–24 (3d Cir. 1994), *superseded by statute on other grounds as recognized in Nat'l City Mortg. Co. v. Stephen*, 647 F.3d 78, 83 (3d Cir. 2011). However, "[t]he presence of additional parties in the state action does not destroy the parallel nature of the cases when all of the parties in the federal action are also parties in the state action." *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 510 (E.D. Pa. 2002). Rather, the question is whether there is "a likelihood that the state litigation will dispose of all the claims presented in the federal case." *Id.* at 510-11.

The Washington Action and the Pennsylvania Action are parallel proceedings. The cases raise the same legal issue arising from the same written agreement: whether Great American breached the terms of the Bond. In the Washington Action, Great American alleges it is not liable under the Bond because (1) COVID-19 is a *force majeure* event, excusing its performance under the terms of the Bond, and (2) its performance is excused under the doctrines of frustration of purpose, impracticability, and impossibility. Washington Compl. ¶¶ 9.2, 9.4, 9.5. Great American can raise those same defenses in the Pennsylvania Action for breach of contract. Further, both cases involve Lincoln Square and Great American as adverse parties. The inclusion of additional defendants in the Washington Action "does not destroy the parallel nature of the cases." *Flint*, 234 F. Supp. 2d at 510. There are no additional parties in the Pennsylvania Action. As such, resolution of the Washington Action would resolve all claims presented in the Pennsylvania Action, and the actions are parallel.

Lincoln Square argues the cases are not parallel because the Washington state court does not have personal jurisdiction over Lincoln Square in the Washington Action and Washington state court is an improper venue for the action. Pl.'s Br. at 9-10. As such, Lincoln Square states "there is little likelihood the Washington litigation will dispose of all the claims presented here." Pl.'s Br. at 9. However, resolution of the Washington Action on the merits would resolve the Pennsylvania Action. Plaintiff's arguments as to whether the Washington state court has personal jurisdiction over Lincoln Square and is the proper venue are more properly considered in the next step of the analysis.

### B. Exceptional Circumstances

The Court next determines if "exceptional circumstances" justify dismissal or a stay for wise judicial administration. The Court specifically weighs the following six factors in making that determination: "(1) [in an *in rem* action,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Spring City Corp. v. American Bldgs. Co.* 193 F.3d 165, 171 (3d Cir. 1999) (internal quotation marks omitted).

In balancing the six factors, "[n]o one factor is necessarily determinative," and "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colo. River*, 424 U.S. at 818–19. The Supreme Court has stated that the "task . . . is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist . . . the 'clearest of justifications' . . . to justify the *surrender* of that jurisdiction."

7

*Moses H. Cone*, 460 U.S. at 25–26.  Simply put, the analysis is "heavily weighted in favor of the exercise of jurisdiction."  *Id.* at 16.

In this case, none of the six factors weigh in favor of abstention.

### 1. *Which court first assumed jurisdiction over property*

The first factor is irrelevant because neither party has brought an *in rem* action.  Defendants argue the Washington Action is *in rem* because Stay Alfred is in state court receivership, and receivership is a proceeding *in rem*.  The Court rejects this argument.  The parallel proceedings relate to the liability of Great American, not Stay Alfred, under the Bond.  In the Washington Action, Great American seeks a declaratory judgment that it is not liable to Lincoln Square under the Bond because COVID-19 constitutes a *force majeure* event that relieves it of liability and its performance is excused under the doctrines of frustration of purpose, impracticability, and impossibility.  In the Pennsylvania Action, Lincoln Square seeks monetary damages from Great American for allegedly breaching the terms of the Bond.  Lincoln Square does not seek relief from Stay Alfred or its property in receivership.  As such, this is not an action *in rem*, and the first factor does not apply to this case.

### 2. *The inconvenience of the federal forum*

The second factor does not weigh in favor of abstention because Lincoln Square and Great American included in the Bond a forum selection clause providing, "Any action to enforce this Lease must be filed in the Commonwealth of Pennsylvania or federal courts of Pennsylvania where the Premises is located."  *See* Lease § 19.02; Lease Guarantee Bond Agreement (incorporating the terms of the Lease into the Bond).  Importantly, Great American does not argue that the Pennsylvania forum selection provision is invalid.  *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (explaining that forum selection clauses are presumed valid

unless a party shows that enforcement would be "'unreasonable' under the circumstances"). In the context of the *Colorado River* analysis, a party subject to a valid forum selection clause has waived the argument that the forum is inconvenient. *See Ingersoll-Rand Financial Corp. v. Callison*, 844 F.2d 133, 137 (3d Cir. 1988). As such, the second factor does not weigh in favor of abstention.

### 3. *The desirability of avoiding piecemeal litigation*

The third factor also does not weigh in favor of abstention. The avoidance of piecemeal litigation factor is "[b]y far the most important factor" in the *Colorado River* balancing test, *Moses H. Cone*, 460 U.S. at 16, but abstention "must be grounded on more than just the interest in avoiding duplicative litigation." *Spring City Corp.*, 193 F.3d at 172. Therefore, this factor is satisfied only "when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan*, 115 F.3d at 197–98. "The presence of garden-variety state law issues has not, in this circuit, been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." *Id.* at 198. There is no such policy for claims such as the contractual claim at issue in this case. *See, e.g. LMP B&B Holdings, LLC v. Hannan*, No. 19-cv-385, 2019 WL 4447627, at *6 (E.D. Pa. Sept. 16, 2019) (DuBois, J.) (finding that parallel state and federal actions for breach of contract do not implicate a federal policy against piecemeal litigation). As such, the third factor does not favor abstention in this case.

### 4. *The order in which jurisdiction was obtained*

The fourth factor does not favor abstention because the Washington state court has not yet obtained jurisdiction over the Washington Action. "[T]he existence of disputes regarding [personal] jurisdiction is significant to the question of which court first obtained jurisdiction."

9

*Nye v. Ingersoll-Rand Co.*, No. 08-3481 (DRD), 2008 WL 5070692, at *10 (D.N.J Nov. 24, 2008). If the state court has not yet decided whether it has personal jurisdiction over one of the parties, "it cannot be argued that the state proceeding first 'obtained' jurisdiction for the purposes of abstention." *Id.* Lincoln Square has filed a motion to dismiss for lack of personal jurisdiction in the Washington Action, and the Washington state court has not yet ruled on that motion. Therefore, the Washington state court has not yet obtained personal jurisdiction over Lincoln Square. As such, the fourth factor does not favor abstention.

### 5. *Whether federal or state law controls*

The fifth factor does not weigh in favor of abstention. Federal courts and state courts are equally competent to apply settled state law. *See Heritage Farms, Inc. v. Solebury Township*, 671 F.2d 743, 747 (3d Cir. 1982). Therefore, this factor is only implicated when the "state-law issues raised . . . are particularly complex or unsettled." *Cottman Transmission Sys., Inc. v. Lehwald, Inc.*, 774 F. Supp. 919, 923 (E.D. Pa. 1991); *see also Ryan*, 115 F.3d at 200. Lincoln Square's breach of contract claim does not raise any novel or particularly complicated state law issues. As such, this factor does not favor abstention.

### 6. *Whether the state court will adequately protect the interests of the parties*

Finally, the sixth factor is not implicated in this case. "[T]he mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction." *Ryan*, 115 F.3d at 200. "Instead, this factor is normally relevant only when the state forum is *in*adequate." *Id.* If present, this factor can only favor the *exercise* of federal jurisdiction, not abstention. In this case, neither party has argued that the Washington state forum is inadequate to protect their interests. For this reason, this factor carries no weight.

In sum, the balance of the factors weighs against abstention. The Court thus declines to abstain in this case.

## V. CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(1) Motion to Dismiss or, in the Alternative, Stay is denied. An appropriate order follows.